OPINION
{¶ 1} Defendant-appellant, Larry Colvard ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas finding him guilty of one count of aggravated burglary and one count of felonious assault.
 {¶ 2} Frannie Garlinger ("Garlinger"), an elderly woman, was living in Apartment #9 at 695 Wedgewood Drive. Her neighbor, Marva Mabe ("Mabe") lived in the apartment next door. Mabe had visited with Garlinger early in the day of February 28, 2004, and Garlinger was free of injuries. Later that afternoon, Mabe heard some noise outside. Mabe peered through a peephole and noticed that Garlinger's screen door was open. Mabe opened her door and saw a man with his back to Garlinger's door using his foot to kick backwards at the door. Startled, Mabe sat down briefly then went back to the door, and was standing in her door when she saw the man leave Garlinger's apartment and go into the laundry room at the apartment complex. Mabe called Garlinger and when Mabe did not receive an answer, Mabe went to Garlinger's apartment and found Garlinger lying on the floor bleeding. Mabe yelled for help to a maintenance man who was painting in the laundry room.
 {¶ 3} John Brock ("Brock") was painting in the laundry room down the hall from Garlinger's apartment, when appellant walked into the laundry room and approached Brock in a threatening manner. Brock moved out of appellant's way as appellant, who stumbled and appeared "crazed" to Brock, went to a window and tried to open it. When the window would not open, appellant stumbled out of the room. Brock then heard Mabe calling for help and went to Garlinger's apartment where Garlinger was lying on the floor bleeding. He proceeded to call 911. While on the phone with the 911 operator, Brock saw appellant standing outside with a woman. Appellant and the woman came back into the apartment building, whereupon appellant began pounding and kicking on an apartment door. Brock asked the woman if she could make appellant stop, at which time appellant and the woman went back downstairs and outside the apartment building.
 {¶ 4} The police and paramedics arrived at the scene. Brock indicated to the police that appellant went around the building. Officer Dale Justice of the Columbus Police Department approached appellant and instructed him to stop. When appellant did not comply, Officer Justice repeated his request and appellant stopped and turned around with a wide-eyed, angry expression. Appellant was detained without incidence. According to Officer Justice, while appellant was in the police cruiser, appellant made statements, without prompting from anyone, that appellant pushed the door open and thought his mother was having a seizure and that he was "just trying to help her." Tr. 50. Garlinger, who apparently does not know appellant, suffered severe injuries from the incident.
 {¶ 5} On March 8, 2004, appellant was indicted by the Franklin County Grand Jury on one count of aggravated burglary and one count of felonious assault. Appellant entered pleas of not guilty to all charges contained in the indictment. Appellant waived his right to a jury trial and a bench trial was held on October 5, 2004. After the bench trial, appellant was found guilty on both counts of the indictment and was subsequently sentenced to four years on each count to be served concurrently. Appellant timely appealed.
 {¶ 6} On appeal appellant asserts the following two assignments of error: Appellant's first assignment of error:
[1.] THE TRIAL COURT COMMITTED HARMFUL ERROR IN ENTERING A GUILTY FINDING ON THE CHARGES CONTAINED HEREIN WHERE THE RECORD FAILS TO ESTABLISH, BY PROOF BEYOND A REASONABLE DOUBT, EACH AND EVERY ELEMENT OF THE OFFENSE CHARGED.
Appellant's second assignment of error:
[2.] THE CONVICTION OF THE DEFENDANT-APPELLANT RELIES UPON IMPROPER INFERENCE STACKING, AND THEREFORE, IT WAS HARMFUL ERROR FOR THE TRIAL COURT TO ENTER GUILTY FINDINGS ON THE OFFENSE CHARGED.
 {¶ 7} In his first assignment of error, appellant challenges only the sufficiency of the evidence presented to sustain the convictions entered by the trial court. The Ohio Supreme Court described the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, followed.)
 {¶ 8} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas
(1982), 70 Ohio St.2d 79, 80. Thus, a verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; State v.Jenks, supra at 273.
 {¶ 9} While this case turns on circumstantial evidence, the Supreme Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone." State v.Franklin (1991), 62 Ohio St.3d 118, 124, citing State v.Nicely (1988), 39 Ohio St.3d 147, 154-155. In fact, circumstantial evidence may "`be more certain, satisfying and persuasive than direct evidence.'" State v. Ballew (1996),76 Ohio St.3d 244, 249, quoting State v. Lott (1990),51 Ohio St. 3d 160, 167, quoting Michalic v. Cleveland Tankers, Inc.
(1960), 364 U.S. 325, 330, 81 S.Ct. 6, 11.
 {¶ 10} Appellant was convicted of aggravated burglary pursuant to R.C. 2911.11(A), which provides in pertinent part:
No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]
Force is defined under R.C. 2901.01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Appellant was also convicted of felonious assault pursuant to R.C. 2903.11, which provides in part that "[n]o person shall do either of the following: (1) Cause serious physical harm to another * * *."
 {¶ 11} While appellant is correct that the record is void of any testimony from the victim and no witnesses claimed to have seen appellant assault Garlinger, we find that viewed in the light most favorable to the state, the circumstantial evidence presented could convince the trier of fact of appellant's guilt beyond a reasonable doubt.
 {¶ 12} Mabe, a retired teacher that has lived next door to Garlinger for approximately eight years, testified that she had visited with Garlinger at approximately 11:00 a.m., on the morning of February 28, 2004, and that Garlinger was fine with no bleeding, bruises, or cuts about her head or body. Later that afternoon while reading in her apartment, Mabe heard some noise, looked through her peephole and noticed that Garlinger's screen door was open. Mabe then opened her door and saw a man standing with his back to Garlinger's door, kicking the door in a manner that was loud and hard. She did not recognize the man at all. Getting nervous and thinking that "something [was] going on," Mabe went back and sat down. Tr. 13. After a short period of time, "one or two minutes," Mabe got up, looked out of her door and the man "was coming out of [Garlinger's] apartment and went across to the laundry room." Id. Mabe called Garlinger's apartment and when Mabe did not get an answer, she went outside. Mabe testified that the man that she saw leaving Garlinger's apartment "went to the laundry room, was talking to the man over there, and I turned and looked and Miss Garlinger's door was standing wide open, and she was laying there on the floor bleeding, looking at me." Tr. 14. Mabe then yelled to the "guy from across in the laundry room," and he came over and called 911 on his cell phone. Tr. 16. Mabe described the man she saw as white, 5'11", 6 foot, and about 190 pounds with a flattop haircut. When asked if she believed whether the individual was in the courtroom, she stated, "I think he's right here," and the record reflects that Mabe identified appellant. Tr. 20.
 {¶ 13} The testimony further revealed that the man in the laundry room was Brock, a part-time painter who was working in the laundry room. Brock testified as follows:
A. Yes, I was painting, and suddenly a gentleman walked into the laundry room and was coming right towards me and his arms were out. His hands were in front of him. He was coming towards me, kind of like a threatening-type gesture. So I just stepped out of the way, hid a bunch of paint supplies on the floor. He was doing some stumbling, and then he immediately went to the windows and tried to open the windows. My impression at the time was that he was high, or seemed like he was on drugs, trying to frantically get the windows open. They were screwed shut, so he was not able to get the windows open.
Q. Did he lay his hands on you?
A. No.
Q. Go ahead.
A. After that, he just stumbled back out of the laundry room.
Q. And what happened then?
A. I was a little bit taken aback by the whole incident, obviously, and so — but then I just went back to work and started the painting, and I believe it was a couple of minutes later I heard someone in the hallway saying, Help, or Come here.
Tr. 31-32.
 {¶ 14} Brock testified that when he looked out he saw Garlinger lying down and saw Mabe in front of Garlinger's door. Mabe was the one that was telling him that she needed help. Brock called 911 on his cell phone. While on the phone with 911, Brock saw appellant and a woman walk back into the apartment building and approach another apartment door where he saw appellant "pounding really hard on the door and kicking it." Tr. 35. Brock asked the woman if she could stop appellant and he "just kept knocking, knocking really hard and kicking the door." Id. Thereafter, Brock, appellant and the woman walked back down the same stairs. Appellant and the woman went outside and Brock went to Garlinger's apartment to wait for the paramedics to arrive.
 {¶ 15} When the police arrived, Brock informed the officer that he thought appellant went around the building. Officer Justice told appellant to stop, and when appellant ignored the request, Officer Justice repeated his command for appellant to stop. Appellant stopped, and "as he turned around, he was very wide-eyed, like he was angry." Tr. 44. Once appellant was in the police cruiser, appellant spontaneously said to the officer that "he pushed the door open," and that "his mother was having a seizure, and he was just trying to help her." Tr. 50.
 {¶ 16} The evidence does more than merely place appellant in the general area of the victim's residence as appellant suggests. Mabe saw Garlinger earlier in the day and Garlinger was free of injuries. Mabe saw a man kicking at Garlinger's door and then saw that same man walk out of Garlinger's apartment a few moments later and go into the laundry room. She then saw Garlinger lying on the floor bleeding as a result of injuries to her head and body. Brock saw appellant enter the laundry room, stumbling in a crazed manner, and then heard Mabe calling for help. Based on the evidence and the testimony of the witnesses, viewed in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crimes of aggravated burglary and felonious assault proven beyond a reasonable doubt.
 {¶ 17} Accordingly, appellant's first assignment of error is overruled.
 {¶ 18} In his second assignment of error, appellant contends that the prosecution's case was constructed from circumstantial evidence that impermissibly required the trier of fact to make inferences based entirely upon other inferences. Like appellant's first assignment of error, this argument suggests that the evidence was insufficient to support appellant's conviction.
A trier of fact may not draw "an inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other facts[.]" Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, paragraph one of the syllabus. However, "an inference * * * based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in * * *." Id., paragraph two of the syllabus.
State v. Cowans (1999), 87 Ohio St.3d 68.
 {¶ 19} "Because reasonable inferences drawn from the evidence are an essential element of the deductive reasoning process by which most successful claims are proven, the rule against stacking inferences must be strictly Iimited to inferences drawn exclusively from other inferences." State v. Evans (Dec. 27, 2001), Franklin App. No. 01AP-594, 2001-Ohio-8860, citingDonaldson v. N. Trading Co. (1992), 82 Ohio App.3d 476, 481.
 {¶ 20} Although a series of inferences arose in this case, none is impermissibly drawn from another. As the foregoing analysis makes clear, the inference that appellant entered Garlinger's apartment and assaulted her is supported by both Mabe's and Brock's testimony about the events that occurred on the afternoon of February 28, 2004. Mabe saw Garlinger earlier in the day and Garlinger was free of injuries. Mabe saw a man kicking hard on Garlinger's door. Moments later, Mabe saw the same man leave Garlinger's apartment and go into the laundry room. Mabe then saw Garlinger on the floor bleeding. Brock was in the laundry room as appellant stumbled into it in a crazed state. Brock then heard Mabe call for help and saw Garlinger on the floor bleeding. The inference that a man gained access to Garlinger's apartment and assaulted her is supported by Mabe's testimony. The inference that appellant was that man is supported not only by Mabe's testimony, but also with the testimony of Brock. Thus, the inferences are based upon different evidence, and therefore, they do not violate the rule against stacking an inference upon an inference.
 {¶ 21} Accordingly, appellant's second assignment of error is overruled.
 {¶ 22} For the foregoing reasons, appellant's first and second assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
French and Christley, JJ., concur.
CHRISTLEY, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.