[Cite as *State v. Jones*, 2019-Ohio-2134.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 18AP-33 (C.P.C. No. 15CR-1790) and |
| v. | : | No. 18AP-34 (C.P.C. No. 15CR-2206) |
| Jeremay Marquis Jones, | : | |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

---

### D E C I S I O N

Rendered on May 30, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee. **Argued:** *Valerie Swanson*.

**On brief:** *Carpenter Lipps & Leland LLP, Kort Gatterdam, David F. Hanson*, and *Erik P. Henry*, for appellant. **Argued:** *Kort Gatterdam*.

---

APPEALS from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Defendant-appellant, Jeremay Marquis Jones, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm.

{¶ 2} At 4:08 a.m. on March 16, 2015, Columbus Police Officer Kenneth Rich was dispatched on report of a theft from a motor vehicle in the area of Patriot Preparatory Academy ("Patriot Prep"). When Rich arrived at the scene, he observed two men seated on the ground shining a flashlight into a duffel bag.

{¶ 3} When the men saw Rich, they ran in opposite directions. One of the men, later identified as appellant, ran toward the school; Rich followed him. Appellant jumped

over a fence and dropped an object on the other side.  When appellant reached down, Rich heard what sounded like a muffled gunshot.  Rich eventually discovered appellant "hiding" on the roof of the school.  (Tr. at 74.)  The second man was never found.

{¶ 4}  Appellant was apprehended and placed in a police cruiser.  Thereafter, police recovered several items from the roof of the school, including nine live rounds of 9mm ammunition, a black leather holster, a folding knife, a cell phone, a pair of gray gloves, a black ski mask, a black hat, a Smith & Wesson 9mm magazine with 16 rounds, and a camouflage duffel bag containing a hunting license, black binoculars, numerous live shotgun shells and one live 9mm round.  Police also recovered a 9mm Smith & Wesson handgun in the area where appellant jumped the fence.

{¶ 5}  At 6:38 a.m., the police released appellant from custody at a nearby gas station. Thereafter, at 7:28 a.m., firefighters from the Columbus Division of Fire were dispatched to a fire at 1177 Fountain Lane, a three-unit, two-story apartment complex. Firefighters arrived at the scene at 7:33 a.m.; the rear of the first floor of one of the apartments was completely engulfed in flames.  They entered the apartment through the locked front door and extinguished the fire.  Thereafter, firefighters discovered the body of a woman, later identified as Anna Ferriman, on a couch in the first floor living room.

{¶ 6}  Gregory Haggit, an arson investigator with the Fire and Explosive Investigation Unit of the Columbus Division of Fire, investigated the scene.  Haggit determined the sliding glass door on the first floor of the unit was open approximately 18 inches when the fire started.  He found no accidental source of ignition from mechanical or electrical means in the area of origin, and determined the fire was caused "by human hands at the north wall involving the recliner." *Id.* at 200.

{¶ 7}  Columbus Police Crime Scene Search Unit ("CSSU") Detective Thomas Burton and other CSSU detectives processed the crime scene.  That process involved, among other things, collecting evidence and photographing the scene, including Ms. Ferriman's body.

{¶ 8}  Deputy Chief Coroner Dr. Kenneth Gerston performed an autopsy on Ms. Ferriman and prepared a report of his findings.  The autopsy revealed a gunshot wound to her right cheek; the path of the bullet led straight to the brain stem which caused instant death.  The autopsy further revealed "full thickness burns over 75 percent of [her] body."

*Id.* at 214. Gerston found no soot in the trachea or larynx. Based on these findings, Gerston determined Ms. Ferriman's cause of death to be a "gunshot wound of the head" which preceded the fire. *Id.* at 216.

{¶ 9} Columbus Police Detective Ronda Siniff, the lead detective in the investigation, obtained surveillance footage from the hospital where Ms. Ferriman worked, which showed that she left work at 12:10 a.m. on March 16, 2015. A search of Ms. Ferriman's car revealed that she attempted to obtain money from an ATM near the hospital at 12:26 a.m. Siniff's investigation further revealed that Ms. Ferriman had no family and was not in good health; she walked with a cane and had a handicap placard in her car. Interviews with two of Ms. Ferriman's coworkers established that she had no known enemies and did not have a significant other. Siniff also spoke with Brenda Ferguson, Ms. Ferriman's friend and the beneficiary of her will. Ms. Ferguson confirmed that Ms. Ferriman's mobility was limited and that she often left her sliding glass door open for her cats. A review of Ms. Ferriman's financial history produced no valuable evidence.

{¶ 10} In the course of her investigation, Siniff learned that Columbus Police Detective Steve Gingery was conducting an investigation into vehicle break-ins occurring in the early morning hours of March 16, 2015, which resulted in the apprehension of a suspect from the rooftop of Patriot Prep, as well as the retrieval of a cell phone, a gun, a holster, and several other items. Siniff noted that Ms. Ferriman lived within one mile of the school. Siniff also learned that the suspect in the break-ins was released from custody just before 7:00 a.m. not far from Ms. Ferriman's home. Her investigation also revealed that none of the victims of the vehicle break-ins had reported a missing firearm. Siniff requested the ballistics lab compare the gun that was recovered from the school grounds to the bullet fragments recovered from Ms. Ferriman.

{¶ 11} Siniff also ordered that a cell tower mapping analysis be performed on the cell phone recovered from appellant. She also retrieved text messages, photographs, and the call log from the cell phone. This information showed that appellant's cell phone was in the vicinity of Patriot Prep and Ms. Ferriman's home on the night of the incident.

{¶ 12} Pursuant to a search warrant, Siniff obtained a map of the longitude and latitude points from the wireless data from appellant's cellphone. That information established that at 3:38 a.m., appellant's cell phone was in very close proximity to Ms.

Ferriman's home. At 4:11 a.m., the cell phone was on the ground in front of Patriot Prep; at 4:38 a.m., the cell phone was on the roof of the school.

{¶ 13} Based upon the evidence gathered during her investigation, Siniff charged appellant on April 10, 2015; appellant was already in jail on an unrelated domestic violence charge. That same day, appellant made several phone calls to his mother, Desiree Jones. The calls were recorded pursuant to jail policy. Siniff obtained the recordings; two calls in particular raised red flags. In one call, appellant directed his mother to retrieve an item that had been sitting out in the rain for some time. Appellant told his mother the item was probably rusty because it had been in the rain and would need to be oiled. Siniff surmised that appellant was talking about a firearm.

{¶ 14} In a second call made a few hours later, appellant provided detailed directions to a location to retrieve an item and the two discussed "taking it apart." *Id.* at 372. Appellant's mother asked appellant if this is "the main" and appellant responded "No. They got that one." *Id.* at 400. Siniff once again concluded that appellant and his mother were discussing a firearm.

{¶ 15} Based on these conversations, Siniff and other officers executed a search warrant at Desiree Jones' home on April 21, 2015. The police found a loaded .22 caliber Smith & Wesson handgun inside a white bag located on the top shelf of a closet.

{¶ 16} On April 10, 2015, a Franklin County Grand Jury indicted appellant in Franklin C.P. No. 15CR-1790 with one count of aggravated burglary in violation of R.C. 2911.11, one count of aggravated robbery in violation of R.C. 2911.01, one count of kidnapping in violation of R.C. 2905.01, one count of aggravated murder in violation of R.C. 2903.01, two counts of murder in violation of R.C. 2903.02, one count of having a weapon while under disability in violation of R.C. 2923.13, two counts of aggravated arson in violation of R.C. 2909.02, one count of tampering with evidence in violation of R.C. 2921.12, and one count of gross abuse of a corpse in violation of R.C. 2927.01. The aggravated burglary, aggravated robbery, kidnapping, aggravated murder and murder counts contained firearm specifications in violation of R.C. Chapter 2941.

{¶ 17} On May 5, 2015, another Franklin County Grand Jury indicted appellant in Franklin C.P. No. 15CR-2206 with one count of tampering with evidence in violation of R.C. 2921.12 with a firearm specification in violation of R.C. Chapter 2941.[1]

{¶ 18} The two indictments were jointly tried to a jury.[2] Appellant waived a jury trial as to the having a weapon while under disability count.

{¶ 19} At trial, the state presented evidence linking appellant to the gun used to kill Ms. Ferriman. Amanda Fashano, a forensic scientist in the DNA section of the Columbus Division of Police Crime Laboratory, compared DNA samples retrieved from appellant to DNA samples collected from the 9mm Smith & Wesson and its magazine. In her reported findings, Fashano concluded that appellant was the major donor of the DNA on both the gun and magazine, meaning that although there were multiple DNA types on both items, his DNA was present in the greatest concentration.

{¶ 20} Mark Hardy, a supervisor in the firearms section of the Columbus Police Crime Lab, testified that he examined both the Smith & Wesson 9mm handgun and the bullet fragment retrieved from Ms. Ferriman; he determined that the bullet was fired from the 9mm handgun. He also concluded that the magazine found on top of the school contained ammunition consistent with the bullet recovered from Ms. Ferriman.

{¶ 21} Columbus Police Detective James Howe testified that he is trained in both digital forensics and historical cell site analysis. He examined appellant's cell phone and found an image of a man from March 11, 2015 that appeared to be appellant holding two firearms. Other images from early March 2015 depicted a firearm in a black leather holster and a 9mm magazine.

{¶ 22} The state also presented evidence establishing appellant's presence near the crime scene. Howe obtained a court order requiring Sprint, appellant's cell phone service provider, to supply historical cell-site location information ("CSLI") for appellant's phone.

---

[1] In case No. 15CR-2206, appellant's mother, Desiree Jones, was indicted on one count of tampering with evidence in violation of R.C. 2921.12, one count of obstructing justice in violation of R.C. 2921.32 with a firearm specification in violation of R.C. Chapter 2941, and one count of having a weapon while under disability in violation of R.C. 2923.13.

[2] Prior to the commencement of trial, the state moved for a nolle prosequi as to the kidnapping count and the accompanying firearm specification.

According to Howe, the CSLI established that between 3:03 a.m. and 4:24 a.m. on March 16, 2015, appellant's cell phone was in the vicinity of the crime scene.

{¶ 23} In addition, Special Agent Brandon Hoyt of the Ohio Bureau of Criminal Investigation, Cyber Crimes Division, testified that he obtained a search warrant requiring Google to provide data about the wireless routers surrounding the cell phone while operating. This data established that appellant was in the area of Patriot Prep and Ms. Ferriman's home from 2:37 a.m. until 4:38 a.m. on March 16, 2015.

{¶ 24} Further, Haggit, the arson investigator, calculated the distance between the gas station where appellant was released by the police and the fire scene to be approximately one mile. Noting the 49-minute time interval between appellant's release at 6:38 a.m. and the 7:28 a.m. fire dispatch, as well as the distance between the gas station and the fire scene, Haggit concluded appellant would have had time to set the fire following his release.

{¶ 25} Appellant testified in his own defense. Appellant averred that on March 16, 2015, he was unemployed; he sold marijuana and stole cars to make money. That night, he went to a bar with his friends, Smiles, T.J., and Jamal, to celebrate his birthday. They left the bar at approximately 2:00 a.m. and drove to the "Fountain Lane area" in order to "scrap[e] up some cash" by breaking into cars. (Tr. at 547.) According to appellant, Smiles lived on the street behind Ms. Ferriman's apartment complex. Smiles dropped appellant, T.J., and Jamal off and left to meet his girlfriend. Thereafter, the three men walked around the neighborhood for "probably 30 minutes or hour," smoking marijuana and looking for cars to steal. *Id.* at 549. At some point, Smiles called and said he would rejoin the group in approximately 20 minutes. After Smiles returned, the four men located an unoccupied vehicle; appellant handed his gun to Smiles and told him to keep watch while he broke into the vehicle. Shortly thereafter, appellant heard a gunshot. He jumped out of the car and ran; Smiles, T.J., and Jamal ran in other directions. He eventually met up with the others. Referring to the gunshot, appellant asked Smiles, "[w]hat happened?" Somebody came outside?" *Id.* at 554. Smiles replied, "[y]eah." *Id.* at 555. Appellant asked "[d]id you hit him?" *Id.* Smiles said, "Nah. I don't think I hit him." *Id.* Appellant then retrieved his gun from Smiles; Smiles and Jamal then left. T.J. remained with appellant.

{¶ 26} Soon thereafter, appellant and T.J. broke into an SUV and stole a camouflage duffel bag containing multiple shotgun shells and other ammunition. When a police cruiser arrived, appellant and T.J. started running. Appellant jumped a fence and pulled his gun out of its holster because he did not want to drop it. As he jumped the fence, the gun went off. Appellant immediately panicked because he did not want the police to think he was shooting at them; he threw the gun down and climbed on the roof of a nearby school. He emptied his pockets and hid from the police. The police apprehended him and placed him in the back of a police cruiser. Appellant told the police he did not want to talk to them; he then fell asleep because he was drunk. The police eventually released him at a nearby gas station.

{¶ 27} After he was released, he started walking around the neighborhood. A friend named Ashley drove by and offered him a ride. He accepted her offer and asked her to drop him at a location in downtown Columbus so he could complete some paperwork related to his pending enrollment at Columbus State. Thereafter, he walked to Columbus State to enroll. He then took a bus to his mother's house.

{¶ 28} Appellant admitted that he owned the gun depicted in the images on his cell phone and that it was the one used in the murder of Ms. Ferriman. However, he denied shooting Ms. Ferriman or setting fire to her house; indeed, he averred that he had never been to Ms. Ferriman's house. He further testified that "it [was] fair to say" that "it would had to have been" one of his friends who shot Ms. Ferriman. *Id.* at 566. Appellant noted that he gave his gun to Smiles at one point, that Smiles was the only person other than him who had possession of the gun, and that Smiles eventually returned the gun to him.

{¶ 29} Appellant also testified that he owned a Ruger 9mm and used it during a domestic dispute with his girlfriend about three weeks after the events at issue in the instant case. He threw it in some bushes because his girlfriend called the police and he "didn't want to make police contact and have a weapon on me." *Id.* at 538. He further averred that in his jail call to his mother, he directed her to retrieve the Ruger. He did not know what happened to the gun after he directed his mother to retrieve it. He denied ownership of the gun found at his mother's home.

{¶ 30} At the conclusion of trial, the jury found appellant guilty on all counts. The trial court subsequently found appellant guilty of the having a weapon while under disability count. The trial court sentenced appellant accordingly.

{¶ 31} Appellant appeals and assigns the following errors:

[1]. THE TRIAL ABUSED ITS DISCRETION AND DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS BY ADMITTING REPETITIVE, GRUESOME PHOTOGRAPHS OF THE DECEASED.

[2]. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION[S] 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

[3]. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUIONS.

[4]. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS BY ADMITTING CELL-SITE LOCATION INFORMATION WHEN THE EVIDENCE WAS OBTAINED WITHOUT A WARRANT CONTRARY TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND CORRESPONDING RIGHTS UNDER THE OHIO CONSTITUTION.

{¶ 32} In his first assignment of error, appellant contends the trial court abused its discretion by admitting multiple autopsy and crime scene photographs. The challenged photographs show significant burns to Ms. Ferriman's body and face. Appellant claims the trial court erred by admitting these photographs because they were gruesome and repetitive and their probative value was substantially outweighed by the danger of unfair prejudice in violation of Evid.R. 403.

{¶ 33} The admission of photographic evidence is subject to the sound discretion of the trial court. *State v. Albert,* 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 10, citing *State v.*

*Ware,* 10th Dist. No. 04AP-43, 2004-Ohio-6984, ¶ 32. "An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable or arbitrary." *State v. Johns,* 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 26, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). When considering the admissibility of photographic evidence in a noncapital case, a trial court must employ the balancing test under Evid.R. 403. *Albert* at ¶ 10. Evid.R. 403(A) provides that " '[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' " *Albert* at ¶ 10, citing *State v. Kovacic,* 11th Dist. No. 2010-L-065, 2012-Ohio-219, ¶ 29. That the photographs may be gruesome does not render them inadmissible if they otherwise satisfy the balancing test of Evid.R. 403(A). *Id.,* citing *Ware* at ¶ 32.

{¶ 34} Prior to Gerston's testimony, defense counsel objected to the admission of two of the autopsy photographs the state intended to introduce, those of the left and right hands, arguing that they were duplicative and had no evidentiary value. Concluding that the jury was entitled to see the damage to Ms. Ferriman's entire body, the trial court overruled the objection and admitted the photographs. We find no error in their admission. The photographs were relevant to establishing the injuries Ms. Ferriman sustained in the fire. In addition, the photgraphs clearly were not duplicative, as they depicted Ms. Ferriman's right and left hands.

{¶ 35} In addition, six other autopsy photographs were admitted into evidence, as well as numerous crime-scene photographs taken by Haggit and Burton. Defense counsel did not object to any of these photographs. Thus, appellant has waived all but plain error.

{¶ 36} Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. *State v. Gravely,* 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 33 (10th Dist.). To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *Id.,* citing *State v. Barnes,* 94 Ohio St.3d 21, 27 (2002). Even if an error satisfies these prongs, appellate courts are not required to correct the error. *Id.* Appellate courts retain discretion to correct plain errors. *Id.,* citing *Barnes* and *State v. Litreal,* 170 Ohio App.3d 670, 2006-Ohio-5416, ¶ 12 (4th Dist.). Courts are to notice plain error under Crim.R. 52(B) " 'with the

utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.,* citing *Barnes,* quoting *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 37} The trial court admitted eight autopsy and numerous crime scene photographs depicting Ms. Ferriman's body. The state offered the autopsy photographs to explain the coroner's medical and forensic testimony with regard to the cause of death and injuries sustained in the fire. Appellant claims that the only relevant autopsy photographs are the two depicting the gunshot wound entrance, as the coroner determined the cause of death was a gunshot wound to the head. However, appellant's contention does not consider that appellant was also charged with gross abuse of a corpse. To prove that crime, the state was required to demonstrate that appellant treated a human corpse in a way that would outrage reasonable community sensibilities. R.C. 2927.01(B). The photographs of Ms. Ferriman's charred body, unrecognizable face, and burned off fingers were relevant to proving this charge. *See State v. Frazier,* 5th Dist. No. 13-CA-91 (Dec. 19, 1991) (photograph depicting condition of corpse ten days after crime committed relevant to prove gross abuse of corpse).

{¶ 38} In addition, the autopsy photographs were not cumulative or repetitive as each depicted different areas of Ms. Ferriman's burned body. Moreover, even if the photographs could be considered gruesome, that is not, standing alone, a basis for exclusion. *State v. Reaves,* 130 Ohio App.3d 776, 787 (1st Dist.1998) (Trial court did not err in admitting, over objection, 25 crime-scene photographs, 26 autopsy slides, and 1 enlarged picture of an autopsy slide upon finding such evidence was not gruesome.).

{¶ 39} The crime scene photographs of Ms. Ferriman's body provided the jury an appreciation for the heinous nature and circumstances of the crimes. The photographs were relevant and helped to prove appellant's intent. The photographs further illustrated the testimony of the detective and arson investigator who described the crime scene. Moreover, " 'reversal is not required merely because a large number of photos were admitted.' " *State v. Wharton,* 9th Dist. No. 2330, 2007-Ohio-1817, ¶ 11, quoting *State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 26. Therefore, appellant has not established that the potential unfair prejudice of the photographs substantially outweighed their probative value.

{¶ 40} Appellant has not demonstrated error, let alone plain error, in the trial court's admission of the photographs.  We thus overrule appellant's first assignment of error.

{¶ 41} We address appellant's fourth assignment out of order for analytical clarity. Appellant argues that the trial court abused its discretion when it admitted CSLI obtained from appellant's wireless cell phone carrier when such evidence was obtained without a warrant supported by probable cause contrary to the Fourth and Fourteenth Amendments to the U.S. Constitution and corresponding rights under the Ohio Constitution.

{¶ 42} As noted above, Howe testified that he obtained CSLI from appellant's wireless cell phone carrier pursuant to a court order.  The CSLI established that appellant was in the vicinity of Ms. Ferriman's home at the time of the crime.

{¶ 43} Appellant's counsel did not object to the CSLI.  Accordingly, he must demonstrate plain error in its admission.  Crim.R. 52(B).

{¶ 44} Appellant relies upon *Carpenter v. United States,* __ U.S. __, 138 S.Ct. 2206, (2018), wherein the Supreme Court of the United States held that the acquisition of CSLI constitutes a search within the meaning of the Fourth Amendment, and thus requires the government to obtain a warrant for CSLI that is supported by probable cause.  *Id.* at 2221. In *Carpenter,* the government applied for court orders seeking to obtain the defendant's CSLI pursuant to a federal statute, the Stored Communications Act, 18 U.S.C. 2703.   The Act required the government to obtain a court order upon offering "specific and articulable facts" demonstrating "reasonable grounds" to believe the records were "relevant and material to an ongoing criminal investigation." 18 U.S.C. 2703(d).  The Supreme Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI.  The location information obtained from Carpenter's wireless carriers was the product of a search." *Carpenter* at 2217.  The court further held that because the acquisition of CSLI constitutes a search under the Fourth Amendment, "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Id.* at 2221.

{¶ 45} While *Carpenter* is controlling going forward, it does not apply retroactively to appellant's case.  In *United States v. Chavez,* 894 F.3d 593 (4th Cir.2018), the court found that the good-faith exception to the exclusionary rule applied in circumstances similar to those in the instant case.  As in the present case, the investigators in *Chavez* relied

on court orders and the Stored Communications Act in obtaining CSLI. The court noted that the " 'sole purpose' " of the exclusionary rule is " 'to deter future Fourth Amendment violations.' " *Id.* at 608, quoting *Davis v. United States,* 564 U.S. 229, 236-37 (2011). Further quoting *Davis,* the court averred that "when investigators 'act with an objectively "reasonable good-faith belief" that their conduct is lawful,' the exclusionary rule will not apply." *Id.*, quoting *Davis* at 238, quoting *United States v. Leon,* 468 U.S. 897, 909 (1984). "Objectively reasonable good faith includes 'searches conducted in reasonable reliance on subsequently invalidated statutes.' " *Id.*, quoting *Davis* at 239. The court concluded that the investigators reasonably relied on court orders and the Stored Communications Act in obtaining the CSLI and that the good-faith exception to the exclusionary rule applied to the investigators' actions.

{¶ 46} Here, Howe obtained a court order requesting historical CSLI from appellant's third-party cell phone provider. At the time, CSLI was attainable pursuant to a court order. 18 U.S.C. 2703(d). Appellant does not suggest that the state failed to properly obtain the court order. Rather, he argues that, pursuant to *Carpenter,* the state was required to obtain a warrant before it could search his cell phone records. In his reply brief, appellant notes that the police obtained a warrant to retrieve cell phone location data from Google. Appellant questions why the police would believe a warrant was necessary in obtaining the Google data, but not for the CSLI when both types of evidence involved the same cell phone. Appellant asserts that "[t]his should have signaled to the officers that something was amiss with the Stored Communications Act." (Appellant's reply brief at 20). Appellant's argument would require law enforcement to engage in speculation as to how the U.S. Supreme Court would address CSLI issues and the Stored Communications Act in the future. As *Carpenter* had not yet been decided at the time Howe obtained the court order, the good-faith exception to the exclusionary rule applies to his actions here.[3]

{¶ 47} Appellant has not demonstrated error, let alone plain error, in the trial court's admission of the CSLI. We thus overrule appellant's fourth assignment of error.

{¶ 48} In his second assignment of error, appellant maintains that he received ineffective assistance of counsel. We disagree.

---

[3] We need not and do not address whether one has a reasonable expectation of privacy in CSLI relating to a cell phone that one voluntarily has abandoned.

{¶ 49} To establish a claim of ineffective assistance of counsel, appellant must demonstrate that counsel's performance was deficient and that counsel's deficient performance prejudiced him. *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley,* 42 Ohio St.3d 136, 143 (1989), quoting *Strickland.*

{¶ 50} In order to show counsel's performance was deficient, the appellant must prove that counsel's performance fell below an objective standard of reasonable representation. *Jackson* at ¶ 133. The appellant must overcome the strong presumption that defense counsel's performance falls within a wide range of reasonable professional assistance. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101, citing *Strickland* at 689. To show prejudice, the appellant must establish that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204.

{¶ 51} Appellant contends that his trial counsel was ineffective in several respects. Specifically, appellant maintains that counsel was ineffective in failing to object to: (1) crime scene photographs of the victim's body, (2) victim impact testimony offered by Ms. Ferguson, (3) improper testimony from Siniff, (4) repeated references to appellant's incarceration and (5) improper cross-examination of appellant. Appellant also contends that counsel was ineffective in failing to seek suppression or exclusion of CSLI.[4]

{¶ 52} When a claim of ineffective assistance of counsel is based on counsel's failure to file an objection or file a motion, the appellant must demonstrate that the objection or motion had a reasonable probability of success. *Johns*, 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 25, citing *State v. McClellan,* 3d Dist. No. 1-09-21, 2010-Ohio-314, ¶ 62 (objection) and *State v. Adkins,* 161 Ohio App.3d 114, 2005-Ohio-2577, ¶ 14 (4th Dist.) (motion). If the objection or motion would not have been successful, then the appellant cannot prevail on an ineffective assistance claim. *Id.* citing *State v. Barbour,* 10th Dist. No.

---

[4] We note that prior to trial, appellant's former counsel sought to exclude or limit the testimony of the state's cell-site analysis expert pursuant to Evid.R. 104, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Counsel did not seek exclusion based on the Fourth Amendment. The trial court conducted a *Daubert* hearing prior to trial and ruled the state's expert could testify as to the CSLI.

07AP-841, 2008-Ohio-2291, ¶ 14.  In the present case, we find any objection or motion to preclude admittance of the challenged evidence would not have been successful.

{¶ 53}  In the first assignment of error, we concluded that the probative value of the crime scene photographs outweighed any potential unfair prejudice, as the photographs aided the jury in understanding the nature and circumstances of the crimes.  As such, we cannot find that an objection to these photographs would have had a reasonable probability of success.

{¶ 54}  Appellant's argument regarding the testimony of Ms. Ferguson is similarly unpersuasive.  Ms. Ferguson testified that she was Ms. Ferriman's friend and the beneficiary of her will.  She further testified that Ms. Ferriman lived alone, had no family members or significant other, had physical limitations which negatively impacted her mobility, and often left her sliding glass door open at night.  Appellant suggests that this evidence caused the jury to empathize with the victim to his detriment.

{¶ 55}  In *State v. Lorraine,* 66 Ohio St.3d 414 (1993), the defendant argued that it was prejudicial to introduce evidence of the victims' advanced age, the length of their marriage, their physical weaknesses, one victim's mental alertness, their suffering, and the lack of clothing on one of the victims when found.  In rejecting the defendant's claim, the court stated that "[f]or the most part, this evidence illustrated the nature and circumstances of the crimes, since the physical condition and circumstances of the victims are relevant to the crime as a whole. The victims cannot be separated from the crime."  *Id.* at 420.  Similarly, in *State v. Swan,* 1st Dist. No. C-920912 (Nov. 24, 1993), the court rejected a defendant's claim that he was denied effective assistance of counsel because his trial counsel did not object to the introduction of evidence regarding the victim's status as an honor student and his participation in community activities.  Citing *Loraine,* the court found that the evidence was admissible and relevant to the victim's background.

{¶ 56}  Here, Ms. Ferguson provided background information about Ms. Ferriman that aided the jury in understanding the circumstances surrounding her death. Ms. Ferguson's testimony was relevant to establishing that no one in Ms. Ferriman's life had reason to kill her and that her age, physical infirmities, and the fact that she lived alone and left her sliding door open at night left her vulnerable such that this crime was essentially

one of opportunity.  Accordingly, we cannot find that an objection to this testimony would have had a reasonable probability of success.

{¶ 57} Appellant next contends that much of the testimony offered by Siniff constituted hearsay in violation of Evid.R. 802, was beyond the scope of her qualifications in violation of Evid.R. 701, and was the subject of numerous leading questions contrary to Evid.R. 611(C).  Appellant contends trial counsel provided ineffective assistance in failing to object to it.   Again, we disagree.

{¶ 58} Appellant's hearsay contentions involve Siniff's testimony about interviews she conducted with Ms. Ferriman's coworkers and neighbors and her testimony regarding the results of other detectives' investigations into Ms. Ferriman's financial history and CSLI.  "In general, statements offered by police officers explaining their conduct while investigating a crime 'are not hearsay because they are not offered for their truth, but, rather, are offered as an explanation of the process of investigation.' " *State v. Bartolomeo,* 10th Dist. No 08AP-969, 2009-Ohio-3086, ¶ 17, quoting *State v. Warren,* 8th Dist. No. 83823, 2004-Ohio-5599, ¶ 46.   Here, Siniff was describing her general investigatory process as she gathered information about the crime.  Moreover, Siniff's testimony was largely cumulative to other properly admitted testimony.  Ms. Ferguson testified about Ms. Ferriman's lifestyle and Howe and Hoyt testified about information they obtained in the course of their respective CSLI and Google analyses.  Thus, we cannot find that an objection to this testimony would have had a reasonable probability of success.

{¶ 59} Also without merit are appellant's claims about counsel's alleged ineffectiveness in failing to object to the state asking Siniff leading questions.  "Evid.R. 611(C) provides that leading questions should not be used on direct examination of a witness except as may be necessary to develop his [or her] testimony." *State v. Edwards,* 10th Dist. No. 10AP-681, 2011-Ohio-3157, ¶ 16.  Because a trial court has broad discretion in allowing leading questions, counsel's decision not to object is within the realm of trial strategy.  *Id.*  Thus, an appellate court "need not second-guess the decision of appellant's defense counsel to not object to leading questions." *Id., see also State v. Jackson,* 92 Ohio St.3d 436, 449 (2001) (declining to find ineffective assistance of counsel from an attorney's failure to object to the state's excessive leading questioning).

{¶ 60}  Review of the record reveals that counsel did not object to many of the leading questions posed by the state; however, we cannot say that counsel's failure to do so was not a strategic or tactical decision.   Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available.  *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). Furthermore, as for any of the leading questions, the state could have simply rephrased them.  *Edwards* at ¶ 17.  Thus, we cannot find that an objection to this testimony would have had a reasonable probability of success.

{¶ 61}  Appellant's complaints about Siniff's alleged lay opinion testimony regarding the telephone calls made to his mother from jail are similarly unfounded.  Pursuant to Evid.R. 701, "a witness who has not been qualified as an expert may testify as to opinions that are '(1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.' "  *State v. Neil,* 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 71.  Siniff's belief that appellant and his mother were discussing retrieval of a firearm was rationally based on her listening to the phone calls and her experience with firearms.  This testimony also aided the jury in determining a fact in issue regarding the charge of tampering with evidence.  As such, an objection to this testimony would not have had a reasonable probability of success.

{¶ 62}  Appellant next argues that counsel was ineffective in failing to object to or request a limiting instruction regarding the jail calls.  Appellant specifically contends that references to the jail calls eroded the presumption of innocence and permitted the jury to infer guilt.

{¶ 63}  Initially, we note that "a criminal defendant's out-of-court statement, offered against the defendant by the state, is admissible pursuant to Evid.R. 801(D)(2)(a)." *State v. Sowell,* 10th Dist. No. 06AP-443, 2008-Ohio-3285, ¶ 79, citing *State v. Johnson*, 12th Dist. No. CA2002-04-100, 2003-Ohio-2540, ¶ 21.  "This rule permits the admission of such evidence when it is 'offered against a party' and is the party's 'own statement." *Id.*  Here, it is uncontroverted that the recordings at issue were made from telephone calls originated by appellant while he was in jail awaiting trial and that the voice on the recordings is that of appellant. Thus, the statements were admissible and counsel was not ineffective in failing to object.

{¶ 64} Furthermore, reference to the jail calls did not contravene the presumption of innocence. When a defendant is being tried for aggravated murder and other associated violent crimes, it is self-evident that he or she has been arrested. Evidence about a defendant's arrest and ensuing custody does not contravene the presumption of innocence. *State v. Williams,* 99 Ohio St.3d 439, 2003-Ohio-4164, ¶ 75. Moreover, while no specific curative instruction was requested or provided, the trial court fully explained the presumption of innocence in the jury instructions. A jury is presumed to follow a trial court's instructions. *State v. Trewartha,* 10th Dist. No. 05AP-513, 2006-Ohio-5040, ¶ 20.

{¶ 65} Appellant's claim that trial counsel was ineffective in failing to object to the state's cross-examination of him also fails. "Cross-examination is permitted on all relevant matters and on matters affecting credibility. Evid.R. 611(B)." *State v. Canada,* 10th Dist. No. 14AP-523, 2015-Ohio-2167, ¶ 55. Moreover, "[t]he scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 St.3d 412, 2006-Ohio-2815, at ¶ 101, citing *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, ¶ 45.

{¶ 66} On direct examination, appellant testified that he made money by engaging in various illegal activities, including selling marijuana. He averred that he owned a firearm because "weed dealers" are often robbed. (Tr. at 537.) He admitted that he had several convictions including one for "possession of drugs." *Id.* at 541. On cross-examination, the state introduced a copy of appellant's 2013 conviction for possession of cocaine and elicited testimony from appellant that his conviction for "possession of drugs" was not just for marijuana and prohibited him from owning a firearm. Appellant contends that because the having a weapon while under disability count was tried to the court, the state's introduction of the conviction before the jury was irrelevant and prejudicial. We disagree.

{¶ 67} Appellant's conviction for cocaine possession was relevant. As appellant testified in his own defense, his credibility was at issue. Appellant's failure to specify on direct examination the type of drug involved in his 2013 conviction opened the door for the state to elicit the omitted detail that the conviction was for cocaine possession, thus challenging appellant's credibility. *State v. Baskerville,* 9th Dist. No. 28148, 2017-Ohio-4050, ¶ 9, citing *State v. Williams,* 38 Ohio St.3d 346, 350 (1988). Moreover, the jury was instructed that it could only consider evidence that appellant had been convicted of other

crimes to "judge the defendant's credibility and the weight to be given to his testimony." (Tr. at 666.)   Accordingly, defense counsel was not ineffective in failing to object to the state's cross-examination on this issue.

{¶ 68} Appellant also complains that counsel was ineffective in failing to object to the state's cross-examination about his pending domestic violence case.   On direct examination, appellant testified that he was involved in a domestic incident with his girlfriend approximately three weeks after the incident at issue in this case.   According to appellant, when his girlfriend called the police, he threw his gun in some bushes so he would not be caught with it when police arrived.   Appellant was arrested and charged with domestic violence and aggravated menacing.   Appellant asserted that it was this gun he and his mother discussed during the jail call.   On cross-examination, the state questioned appellant about the details of the domestic violence charge.   Appellant's testimony opened the door for further inquiry by the state pertaining to that incident.   *Baskerville.*   As such, counsel was not ineffective in failing to object to the state's inquiry on cross-examination.

{¶ 69} Appellant next argues that counsel was ineffective in failing to object to the state's cross-examination about images on his phone which depicted him posing with guns. In its case-in-chief, the state introduced these photographs through the testimony of its witnesses. On direct examination in his case, appellant testified that it was wrong and "stupid" of him to take these photographs.   (Tr. at 535.)   Upon the state's questioning on cross-examination, appellant admitted that he owned the guns depicted in the photographs, including the gun used to murder Ms. Ferriman.

{¶ 70} Appellant contends that the state should not have introduced the photographs because appellant admitted that he owned the murder weapon.   However, as the state notes in its brief, at the time the state introduced the photographs in its case-in-chief, it did not know whether appellant would testify, or if he did testify, what admissions he would make.   We find nothing improper in either the state's introduction of the photographs in its case-in-chief or its cross-examination of appellant after he testified about them in his direct examination.   As such, counsel was not ineffective in failing to object to the state's cross-examination in this regard.

{¶ 71} Appellant also contends counsel was ineffective in failing to object to the CSLI testimony and documentary evidence. As we resolved in our fourth assignment of error, admission of the CSLI was proper; hence, any objection would have been unsuccessful.

{¶ 72} Appellant finally argues that even if we conclude that none of the above six alleged errors are sufficient to find ineffective assistance of counsel standing alone, the cumulative effect of these errors nonetheless resulted in appellant being denied a fair trial.

{¶ 73} Appellant relies on *State v. DeMarco,* 31 Ohio St.3d 191 (1987) for the proposition that although errors at trial singularly "may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *Id.* at paragraph two of the syllabus. Appellant urges us to conclude that his trial counsel's many errors, when considered together, deprived him of a fair trial.

{¶ 74} Having found no deficiency in counsel's performance in any of the ways enumerated by appellant, we cannot find cumulative error.

{¶ 75} For the foregoing reasons, appellant's second assignment of error is overruled.

{¶ 76} Appellant contends in his third assignment of error that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, at ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

{¶ 77} In *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, the Supreme Court of Ohio set forth the role of an appellate court presented with a challenge to the sufficiency of the evidence:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶ 78} "Whether the evidence is legally sufficient is a question of law, not fact." *Gravely* at ¶ 43, citing *Thompkins* at 386. "[I]n determining the sufficiency of the evidence, an appellate court must give 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Id.,* citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact." *Id.,* citing *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79, and *State v. Thomas*, 70 Ohio St.2d 79, 80 (1982). An appellate court may not disturb a verdict unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *Gravely* at ¶ 43, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), and *Jenks* at 273.

{¶ 79} A manifest weight of the evidence claim, however, requires a different review. *Gravely* at ¶ 44. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *Id.,* citing *State v. Brindley,* 10th Dist. No. 01AP-926, 2002-Ohio-2425, ¶ 35. An appellate court presented with a challenge to the manifest weight of the evidence must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, citing *Thompkins* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.* at ¶ 36, quoting *Thompkins.*

{¶ 80} A conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the appellant's version. *Gravely* at ¶ 45, citing *State v. Gale,* 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19 and *State v. Williams,* 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 17. The trier of fact is free to believe or disbelieve all or any of the testimony. *Id.,* citing *State v. Jackson*, 10th Dist. No. 01AP-973, 2002-Ohio-1257, and *State v. Sheppard,* 1st Dist. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and

demeanor, and determine whether the witnesses' testimony is credible. *Gravely* at ¶ 45, citing *State v. Williams,* 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58, and *State v. Clarke*, 10th Dist. No. 01AP-194 (Sept. 25, 2001). Accordingly, an appellate court must ordinarily give great deference to the fact finder's determination of the witnesses' credibility. *Gravely* at ¶ 45, citing *State v. Covington,* 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 28, and *State v. Hairston,* 10th Dist. No. 01AP-1393, 2002-Ohio-4491, ¶ 74.

{¶ 81} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Gravely* at ¶ 46, citing *State v. Braxton,* 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15, citing *State v. Roberts*, 9th Dist. No. 96CA006462 (Sept. 17, 1997). Consequently, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Gravely* at ¶ 46, citing *Braxton.* In that regard, we first examine whether appellant's convictions are supported by the manifest weight of the evidence. *Sowell*, 10th Dist. No. 06AP-443, 2008-Ohio-3285, ¶ 89.

{¶ 82} At the outset, appellant concedes that he committed the offense of tampering with evidence when he directed his mother to retrieve a firearm in an unrelated case. (Defendant's brief at 42, fn.3). As to the remaining charges, appellant also concedes that Ms. Ferriman was shot and killed, that her residence was set on fire after her death, and that her corpse was abused. Appellant argues that the state failed to prove beyond a reasonable doubt that he committed these offenses.

{¶ 83} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Robinson,* 10th Dist. No. 16AP-247, 2017-Ohio-20, ¶ 13. While this case turns on circumstantial evidence, the Supreme Court of Ohio has held that a conviction may be sustained on circumstantial evidence alone. *Id.* Indeed, this court has recognized that "circumstantial evidence may 'be more certain, satisfying and persuasive than direct evidence.' " *State v. Colvard,* 10th Dist. No. 04AP-1352, 2005-Ohio-4242, ¶ 9, quoting *State v. Ballew,* 76 Ohio St.3d 244 (1996).

{¶ 84} Here, the state presented circumstantial evidence linking appellant to the murder weapon. The state's evidence established that appellant possessed the murder weapon both before and after the crime, that his DNA was on the murder weapon, and that

his cell phone contained images of him holding the murder weapon. The state also presented evidence establishing that the police observed appellant drop the murder weapon while he was being pursued, and later recovered the weapon from the spot appellant dropped it. In addition, appellant admitted that he had the murder weapon on him as he fled from police.

{¶ 85} The state also presented evidence establishing appellant's presence near the crime scene. Appellant was apprehended on the roof of a school building within one mile of Ms. Ferriman's home. Appellant's cell phone records established that he was on the school grounds, on the roof of the school building, and very near Ms. Ferriman's home.

{¶ 86} Appellant notes that in his testimony, he acknowledged being in the general vicinity of Ms. Ferriman's residence on the night in question and that he owned the weapon used to kill Ms. Ferriman. He further notes that he denied shooting Ms. Ferriman or ever entering her residence. Appellant argues that no witness testified to seeing him commit the crimes and that his testimony established that his gun was out of his control for a portion of the evening and that one of his friends likely killed Ms. Ferriman. The jury could have reasonably chosen to believe his admission regarding his presence in Ms. Ferriman's neighborhood and his ownership of the gun, but disbelieved his testimony that he did not shoot Ms. Ferriman and that one of his friends likely did so. As noted above, a jury is free to believe all, part, or none of a witness' testimony. *Gravely* at ¶ 45.

{¶ 87} Based on our review of the evidence and reasonable inferences drawn therefrom, we cannot find that the jury lost its way when it concluded that appellant shot and killed Ms. Ferriman, set her residence on fire after her death, and abused her corpse. Here, although individual pieces of evidence may have been insufficient in themselves to prove that appellant committed these crimes, the jury reasonably could have concluded that the evidence, in toto, proved appellant's guilt. Accordingly, appellant's convictions are not against the manifest weight of the evidence. This resolution is also dispositive of appellant's claim that his convictions are not supported by sufficient evidence. *Sowell.* We thus overrule appellant's third assignment of error.

{¶ 88} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER and NELSON, JJ., concur.

_____