[Cite as *State v. Bew*, 2022-Ohio-753.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

          Plaintiff-Appellee,

- v -

AIDEN N. BEW,

          Defendant-Appellant.

CASE NO. 2021-P-0038

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 00552 C

**O P I N I O N**

Decided: March 14, 2022
Judgment: Affirmed

*Victor V. Vigluicci,* Portage County Prosecutor, *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff- Appellee).

*Seneca Konturas,* P.O. Box 662, Aurora, OH 44202 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Aiden Bew, appeals following his conviction for four counts of felonious assault in the Portage County Court of Common Pleas. Appellant was indicted on four counts of attempted aggravated murder and four counts of felonious assault. After a jury trial, the jury found appellant guilty of four counts of felonious assault and was hung on the attempted aggravated murder counts.

{¶2} Appellant raises four assignments of error arguing that his trial counsel rendered ineffective assistance of counsel, that the trial court erred in allowing the State to ask leading questions on direct examination, that the convictions were not supported

by the sufficiency of the evidence, and that the convictions were against the manifest weight of the evidence.

{¶3} After review of the record and applicable caselaw, we find appellant's assignments of error to be without merit. Appellant's trial counsel did not render ineffective assistance of counsel for failing to object to leading questions on direct examination and failing to object to Detective Svab's testimony. The trial court did not err in failing to direct the State to rephrase its leading questions or in overruling two objections to leading questions. Finally, the trial court did not err in denying appellant's Crim.R. 29 motion for a directed verdict and the jury's verdict was not against the manifest weight of the evidence. The judgment of the Portage County Court of Common Pleas is affirmed.

## Substantive and Procedural History

{¶4} On July 16, 2020, Ravenna Police conducted a traffic stop that resulted in a drug arrest of Marquis Barlow. Officers Erb, Twigg, Paolucci, and Wise were in the process of searching the vehicle for contraband, including a loaded handgun that Barlow admitted was in the vehicle, while Barlow was in custody in a police cruiser. During the search, officers heard a volley of gunshots and immediately reported shots fired to dispatch. Moments later, there was a second volley of shots. During the second volley, officers reported that the shots were fired in their direction and sought cover while awaiting backup. There were no further gunshots.

{¶5} Multiple law enforcement agencies engaged in an hours long effort to secure the scene and search for the shooter. Officers found spent shell casings and one live round on the Portage Hike and Bike Trail approximately 900-920 feet away from the location of the traffic stop. During the investigation, officers reviewed their body camera

2

recordings for clues. Officers Erb and Paolucci noted that a red Kia drove by the traffic stop and that they had previously seen the vehicle at a suspected drug house under surveillance that day. The vehicle drove by the traffic stop minutes before the shots were fired.

{¶6} Detectives followed this lead and questioned the owner of the vehicle, Austin Horn. Horn admitted to Detective Kaley that he drove an individual known as "Bubs" in his car, that he dropped him off, that shots were fired, and that he picked "Bubs" up one block south of where the casings were recovered. Two other individuals identified "Bubs" as Aiden Bew and detectives arrested appellant.

{¶7} Detective Kaley interviewed appellant after his arrest. After waiving his *Miranda* rights, appellant admitted that on the night of Barlow's traffic stop, Barlow's girlfriend called appellant and reported Barlow had been stopped by the police. Appellant admitted that he knew Barlow had a loaded handgun in the vehicle, that the gun was stolen, and that Barlow was a convicted felon not permitted to possess a firearm. Appellant said that he did not want to lose another person in his life. Appellant convinced Horn to drive him to the scene of the traffic stop.

{¶8} After driving by the traffic stop, appellant told Kaley that he felt, "I gotta do something." He admitted to firing a gun but said that he fired into the ground. However, Detective Kaley noted that audio recording from the scene recorded two separate volleys of gunfire and that there was one live round at the scene. Appellant admitted that the gun had malfunctioned between the two volleys.

{¶9} At a later interview, appellant denied that the weapon malfunctioned and said that a live round had come out of the gun when he removed the magazine and

3

cleared the weapon. Detective Kaley played video from the scene and appellant admitted that he could hear the sound of bullets flying through the air by the officers at the traffic stop. Kaley also noted that no bullets had been recovered in the ground where the casings were found. Appellant offered that it was possible that bullets flew past the officers as the weapon recoiled from firing.

{¶10} At trial, the officers described the shooting and the State introduced body camera and dash camera recordings of the scene with audio. Officer Paolucci testified that "I felt as though I could actually -- I could actually hear the projectiles piercing through leaves on trees in that area that were in the vicinity of us and I felt that I could feel the energy off those projectiles in my hair. That's how close I felt they were in our direction." Officer Wise said he heard the "projectiles flying very close by." Officer Twigg testified that he heard multiple shots from the direction of the Hike and Bike Trail area "whizzing past me * * * right overtop of our heads." He also said that in the first volley of shots he believed he heard "what sounded like a projectile hitting the ground." Officer Erb heard a first volley of fire and he "stood up to try and figure out where the shots were coming from and there was a second series of shots that came toward us, which, at that point, I could start hearing the projectiles in the air right at us in close proximity." The body camera and dash camera audio recordings capturing the sound of gunfire and the bullets flying in the air were played for the jury.

{¶11} After trial, the jury found appellant guilty of four counts of felonious assault and was hung on the attempted aggravated murder counts. Appellant was sentenced to twenty-eight years in prison and timely appealed this matter raising four assignments of error.

4

## Law and Analysis

{¶12} Appellant's first and second assignments of error state:

{¶13} "[1.] Mr. Bew's 6th Amendment rights were violated when he was denied effective assistance of counsel."

{¶14} "[2.] The trial court erred in permitting the state to ask leading and speculative questions that rendered the trial unfair."

{¶15} In his first assignment of error, appellant claims that counsel rendered ineffective assistance for failing to object to the State's leading questions on direct examination and for failing to object to testimony from Detective Svab, which appellant characterizes as expert testimony. In his second assignment or error, appellant argues that the trial court erred by permitting the State to ask leading questions and in overruling appellant's objections to leading questions. We address the assignments dealing with leading questions together.

{¶16} In reviewing an ineffective assistance of counsel claim, the standard we apply is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *State v. Story*, 11th Dist. Ashtabula No. 2006-A-0085, 2007-Ohio-4959, ¶ 49, quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *Strickland,* at 669. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A failure to "satisfy one prong of the Strickland test negates a court's need to consider the other."

5

Case No. 2021-P-0038

*State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland*, at 697.

{¶17} An appellant "must be able to demonstrate that the attorney made errors so serious that he or she was not functioning as 'counsel' as guaranteed by the Sixth Amendment, and that he was prejudiced by the deficient performance." *Story,* at ¶ 49, quoting *State v. Batich*, 11th Dist. Ashtabula No. 2006-A-0031, 2007-Ohio-2305, ¶ 42. Ohio courts presume that every properly licensed attorney is competent, and therefore a defendant bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. Henderson*, 8th Dist. Cuyahoga No. 88185, 2007–Ohio–2372, at ¶ 42.

**Leading Questions:**

{¶18} Appellant argues that trial counsel was ineffective for failing to object to leading and other improper questions by the State on direct examination. He further argues that the leading questions by the State were so egregious they amounted to plain error. The standard of review for plain error is the same deferential standard applied for "reviewing ineffective assistance of counsel claims." *State v. Payne,* 114 Ohio St.3d 502, 2007–Ohio–4642, ¶ 17.

6

{¶19} Appellant objected to two leading questions which the trial court overruled; trial counsel did not object to the remaining leading questions. Appellant claims this impacted the outcome of his trial. "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. Appellant bears the burden of demonstrating plain error by proving that the outcome would have been different absent the plain error. *Payne,* at ¶ 17.

{¶20} Further, even when the error is obvious, "it must have affected substantial rights," meaning "'that the trial court's error must have affected the outcome of the trial.'" *Id.*, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). This is the same deferential standard applied for "reviewing ineffective assistance of counsel claims." *Id.* Indeed, "even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it * * *." *Id.* at ¶ 23. Courts are cautioned "to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes*, at 27, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶21} Evid.R. 611(C) provides that

Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

7

"A leading question 'instructs [the] witness how to answer or puts into his mouth words to be echoed back." *State v. D'Ambrosio*, 67 Ohio St.3d 185, 190, 616, N.E.2d 909 (1993)., quoting Black's Law Dictionary (6 Ed.1990) 888. It is within the trial court's discretion to allow leading questions on direct examination. *Id.*; *See* Staff Note, Evid.R. 611(C).

{¶22} Because of the trial court's broad discretion to allow leading questions, "'counsel's decision not to object is within the realm of trial strategy.'" *State v. McCleery*, 11th Dist. Trumbull No. 2021-T-0024, 2022-Ohio-263, ¶ 36, quoting *State v. Jones*, 10th Dist. No. 18AP-33, 2019-Ohio-2134, 137 N.E.3d 661, ¶ 59. Moreover, even if an objection should have been made, failure to object will not require a finding of ineffective assistance of counsel unless appellant can demonstrate that the result would have been different but for the lack of objection. *See State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 164; *State v. Jackson*, 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001). Courts have observed that "if defense counsel had objected to any potentially leading questions, 'the state could have simply rephrased" the questions following the objection. *McCleery,* at ¶ 37, quoting *Jones* at ¶ 60.

{¶23} A failure to object to error, without more, is not enough to sustain a claim for ineffective assistance of counsel. *State v. Campbell*, 69 Ohio St.3d 38, 52-53, 630 N.E.2d 339 (1994). "Because '[o]bjections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,' Jacobs, Ohio Evidence (1989), at iii-iv, competent counsel may reasonably hesitate to object in the jury's presence." *Id.* at 53.

Case No. 2021-P-0038

{¶24} Appellant has pointed to over one-hundred examples in the transcript which he believes were inappropriate leading questions that trial counsel should have objected to or that the trial court should have curtailed even without objection.

{¶25} We have reviewed the transcript line by line. Appellant is correct that the State asked a large number of leading questions. However, the vast majority of the leading questions are harmless and within the expected nature of leading questions to be asked on direct examination. Many of the leading questions are orienting questions that are used to direct the testimony to a particular subject or event. Within the category of orienting questions, the State asked many preliminary questions about what the officers were doing at the traffic stop they were conducting prior to the shooting. These questions, particularly those elicited through Officer Erb's testimony, bordered on being so detailed and exhaustive as to be irrelevant to the appellant's charged conduct. Such questions did not result in prejudice to appellant even if they were leading questions.

{¶26} Another type of leading orienting question the State repeatedly asked was about the nature of police practices, such as a very lengthy series of questions about how the Marshal's Service functioned or how a police detective conducts a police interview with a suspect in general terms. Although these questions were leading in nature, most of them did not touch on the substance of the case. Appellant believes that the leading questions allowed the State to present evidence to be ratified by the witnesses and that this limited defense counsel's ability to cross-examine witnesses. However, there is no indication that the trial result would have been different but for an objection or if the trial court instructed the State to rephrase the question.

{¶27} In addition to these preliminary questions, the State also reworded or recapitulated prior testimony and then asked a follow up question based on the recapitulated testimony. This, by far, is the most common form of leading question in this case.

{¶28} We have also reviewed questions wherein the State asked a leading question and, in doing so, directed the content of the testimony through those questions. In most, but not all, of the questions of this sort, the State asked questions that other witnesses had or would provide through non-leading direct testimony. One of appellant's objections was to this sort of question, where the State asked a witness about their involvement in an interview with appellant and Detective Kaley. The court overruled the objection and the witness answered in the negative. Appellant insists that these leading questions allowed a skewed version of the facts to be presented to the jury. However, to the extent that this sort of leading question was improper as to a particular witness, the testimony was elicited through another witness in a non-leading manner. Therefore, it does not appear that any prejudice resulted from these questions.

{¶29} Finally, there were some troubling questions that the State asked that can only be characterized as the prosecutor himself providing substantive testimony. For example:

> "But the shooter chooses this exact direction and chooses to push it as far as he can until their sight picture is obscured by this big bush with all this green foliage on it. And if you look, and the gun's kicking out to the right, the shooter pushed as far as they could and tried to get that angle, tried to get that edge, and indeed from where you're standing and what you hear, succeeded in getting bullets in your guys' direction?"

> "Every bullet if it's angled, depending on its angle, it's going to have a different direction of travel; but they all, because of gravity, they're ballistic coefficient, fly through the air on an arc?"

10

"And there's four cars stacked up here. Brock's car is sticking out on the corner. Twigg's right there on the corner. The other officers are down around the corner. All their lights are on. You can see the splash of lights. The shooter would have seen the cars, would have seen the lights, maybe would have seen Twigg. Clearly, from this bush, you can see where the traffic stop is?"

{¶30} These questions, if they even are questions, are inappropriate for direct examination. We cannot say that counsel should not have objected to these questions or that the trial court should not have directed the State to rephrase the questions.

{¶31} However, it is not clear that had defense counsel objected to these questions or had the trial court instructed the State to reword the questions, that the outcome of the case would have been different such that appellant suffered prejudice. *See Lewis*, 2013-Ohio-3974, ¶ 164 ("Even if an objection should have been made, the failure did not alter the outcome of the trial based on the entirety of the record"). This is because there was overwhelming evidence from many witnesses testifying through open-ended questions that they heard bullets whiz through the air directly overhead and the appellant himself testified that he fired the gun, that he could hear the bullets in the air on body camera recordings, and that it was possible that from where he fired that some of the bullets did fire towards the officers.

{¶32} In addition, the State played multiple body camera and dash camera recordings for the jury which allowed the jury to hear the gunfire and nearby bullets in the air for themselves. Finally, even if defense counsel had objected to the leading questions, "the State could have simply rephrased" the questions. *See Jones*, 2019-Ohio-2134, ¶ 60.

11

Case No. 2021-P-0038

{¶33} Finally, the two objections that appellant's trial counsel did make to leading questions which the trial court overruled similarly would not have affected the outcome of the trial had the court sustained the objections. In one question, the State asked if a witness was part of the interview with the appellant (he was not) and the other dealt with a directing a witness to a demonstrative exhibit. On the evidence that was presented to the jury, we cannot say that the trial court's failure to sustain these objections or the trial court's general failure to stop the State from asking leading questions affected appellant's substantial rights such that the questions "affected the outcome of the trial." *Rogers*, 143 Ohio St.3d 385, at ¶ 22.

**Expert testimony:**

{¶34} Appellant's second claim is that trial counsel was ineffective for not objecting to testimony from Detective Svab, which appellant characterizes as expert testimony. Appellant argues that Svab's testimony about the muzzle velocity and maximum effective range of projectiles and general ammunition performance are matters not commonly within the knowledge or experience possessed by lay people.

{¶35} Evid.R. 702 governs the admissibility of expert testimony so that a witness may testify as an expert if all of the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

12

Case No. 2021-P-0038

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
(2) The design of the procedure, test, or experiment reliably implements the theory;
(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶36} Svab was not qualified as an expert at trial, so any testimony he provided "in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701.

{¶37} At trial, Svab testified that the maximum effective range of a .40 caliber bullet is 1,500 feet. However, he said on cross-examination that the found that information through an internet search. Svab further testified that he performed a test fire of the recovered weapon and a chronograph test of the muzzle velocity of the bullets as they exited the gun. He did this test with multiple types of .40 caliber ammunition and achieved almost identical results in each of his tests. He said on cross-examination that based on the muzzle velocity at the time the bullet left the gun, it would take approximately one second for the bullet to fly the nine-hundred feet to where the officers were located. Also on cross examination, Svab answered in the affirmative that he believed a bullet could penetrate a cinderblock.

{¶38} Part of counsel's trial strategy was to create doubt by suggesting that a building would have blocked the bullets' trajectory and prevented harm to the officers. Appellant argues that his trial counsel's failure to object to Svab's testimony substantially

13

prejudiced him because it was used to explain that from his firing position, appellant was able to fire at the police officers.

{¶39} "Through the years, the scope of Evid.R. 701 has been expanded to such an extent that it has become difficult to distinguish between permissible lay opinion under Evid.R. 701 and expert opinion under Evid.R. 702." *State v. Sanchez*, 11th Dist. Ashtabula No. 2018-A-0097, 2020-Ohio-5576, *appeal not allowed*, 162 Ohio St.3d 1412, 2021-Ohio-961, 165 N.E.3d 327.

{¶40} Consistent with this expanded view, "courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. * * * Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702*, but rather are based upon a layperson's personal knowledge and experience*." (Emphasis added.) (Footnote omitted). *State v. McKee*, 91 Ohio St.3d 292, 296-297, 744 N.E.2d 737 (2001). This application of the rule allows officers or detectives to give lay opinion testimony when the testimony is predicated upon experience, specialized knowledge, or training. *Sanchez,* at ¶ 137.

{¶41} In this case, we cannot say that trial counsel's performance fell below an objective standard of reasonable representation or that appellant was prejudiced by the admission of Svab's testimony. Svab offered testimony based on his training and experience with firearms and his own tests of the recovered weapon. In addition,

14

appellant's trial counsel elicited many of the questions from Svab that appellant now says constituted expert testimony on appeal. These questions were part of the overall trial strategy to cast doubt on the possibility of the bullets causing harm to the officers. If appellant now asserts that this tactic was unwarranted, even "[d]ebatable trial tactics generally do not constitute a deprivation of effective counsel." *Phillips*, 74 Ohio St.3d 85.

{¶42} The thrust of Svab's testimony focused on the effective range of the projectile, the speed of the projectile, or whether the projectile could penetrate a brick or cinderblock wall. This testimony centered on whether the bullets could travel from appellant's location to the officers. We cannot say that this testimony caused prejudice to appellant because the four officers testified that they heard and felt projectiles fly above their heads and possibly strike the ground near them. Moreover, the recordings of the scene capture the sound of gunshots and the near instantaneous sound of bullets flying through the air near the officers. There was no testimony or evidence suggesting the possibility of another shooter. Svab's testimony about whether the bullets could travel the distance between appellant and the officers was not prejudicial as the officers' testimony and recordings all provide clear evidence to that answer. No different outcome would have resulted from counsel's objections to Svab's testimony. *See Strickland*, 466 U.S. 669.

{¶43} Accordingly, appellant's first and second assignments of error are without merit.

{¶44} Appellant's third and fourth assignments of error state:

15

{¶45} "[3.] The trial court erred in failing to grant defendant's motions for acquittal under Crim. R. 29, and for entering judgment on the verdict where it was not supported by sufficient evidence."

{¶46} "[4.] The trial court erred in entering judgment on the verdict against the manifest weight of the evidence."

{¶47} Appellant next argues that the trial court erred by denying his Crim.R. 29 motion for directed verdict and that appellant's conviction was against the manifest weight of the evidence. During trial, appellant repeatedly questioned witnesses about the location of a building between the officers' location and where the spent casings were found. Appellant asserts that it was practically impossible for him to have fired at the officers based on a building obstructing a clear firing line, that the State provided little evidence that appellant intended to shoot at officers, and that the State never found the endpoint of the bullets to prove the trajectory of the bullets could have caused harm to the officers. For these reasons, appellant says that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

**Sufficiency of the Evidence:**

{¶48} "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick, 11th* Dist. Trumbull Nos. 2003-T-0166, 2003- T-0167, 2004-Ohio-6688, ¶ 18. "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed.1990) 1433. *See, also,* Crim.R. 29(A)." *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 678 N.E.2d 541 (1997). The appellate

16

court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶49} When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the State's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶50} In this case, appellant was found guilty of four counts of felonious assault by means of a deadly weapon.

{¶51} R.C. 2903.11(A)(2) provides "No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2923.02(A) defines attempt as when a "person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense," engages "in conduct that, if successful, would constitute or result in the offense."

{¶52} R.C. 2923.02(B) provides that "[i]t is no defense to a charge under this section that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be." R.C. 2901.22(B) provides that a "person acts knowingly, regardless

17

of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶53} The evidence in this case demonstrates that the State put forth sufficient evidence to support the jury verdict as a matter of law. The evidence presented at trial showed that four officers heard two volleys of gun fire and that during the second volley they heard the sound of bullets flying in the air. Officer Paolucci testified that "I felt as though I could actually -- I could actually hear the projectiles piecing through leaves on trees in that area that were in the vicinity of us and I felt that I could feel the energy off those projectiles in my hair. That's how close I felt they were in our direction." Officer Twigg testified that he heard multiple shots from the direction of the Hike and Bike Trail area "whizzing past me * * * right overtop of our heads." He also said that in the first volley of shots he believed he heard "what sounded like a projectile hitting the ground." Body camera and dash camera recordings capture the sound of gun fire and the sound of bullets flying through the air nearby.

{¶54} Appellant admitted during questioning that he received a call about Barlow's traffic stop, that he knew Barlow was a felon in possession of a firearm, that he was concerned about losing another person in his life, and that he went to the location of the traffic stop and that he thought at the time, "I gotta do something." Appellant further admitted to firing a gun, but said he fired it into the ground. At a later interview, appellant did acknowledge that he was able to hear the sound of bullets flying through the air near the officers and did offer that it was possible that recoil from firing the gun caused some bullets to fly in the direction of the officers.

18

Case No. 2021-P-0038

{¶55} Upon these facts, the State presented sufficient evidence that appellant attempted to cause physical harm to the four officers by means of a deadly weapon.

**Manifest Weight of the Evidence:**

{¶56} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins,* at 389. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them." (Emphasis sic.) *Thompkins*, at 386, quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶57} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*

{¶58} The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

19

Case No. 2021-P-0038

{¶59} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any of the outcome of the case and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, must defer to the weight and factual findings made by the jury. *State v. Brown*, 11th Dist. No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶60} A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32.

{¶61} During trial and on appeal, appellant has focused on the impossibility of causing harm to the officers because he claimed that a building obstructed a clear firing line between their location and his firing position. He also argues that because the police never found a clear end point to the shots that the State could not say with certainty what the trajectory of the bullet was.

{¶62} However, the officer's testimony and the recordings at the scene severely undermined appellant's trial defense that it was factually impossible for him to have fired toward the officers. The officers testified to hearing bullets fly by close to their location and some even said they could feel the energy of the bullets in their hair or striking the

20

ground nearby. Their testimony also correctly identified the origin of the shots as coming from the Portage Hike and Bike Trail as they were happening.

{¶63} Appellant's statements to Detective Kaley were contradictory and self-serving. Despite this, he did admit to firing the gun and agreed that it was possible that recoil caused the bullets to travel toward the officers.

{¶64} The greater weight of the evidence shows "clearly to the jury that the party having the burden of proof" was entitled to its verdict. *See Thompkins,* 78 Ohio St. 3d at 386. This is not the extraordinary case where the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *See Id.* at 387.

{¶65} Accordingly, appellant's third and fourth assignments of error are without merit.

{¶66} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.